NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL CRETER,             : | |
| : | |
| Plaintiff,             : | Civ. No. 00-5443 (GEB) |
| : | |
| v.             : | **MEMORANDUM OPINION** |
| : | |
| JO ANNE B. BARNHART,             : | |
| Commissioner of Social Security, : | |
| : | |
| Defendant.             : | |
| : | |

**BROWN, Chief Judge**

This matter comes before the Court upon the appeal of plaintiff Daniel Creter ("Plaintiff") from the Commissioner of Social Security's final decision that Plaintiff was not eligible for Social Security disability insurance benefits under the Social Security Act ("the Act"). The Court, exercising jurisdiction pursuant to 42 U.S.C. § 405(g), and having considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78, will deny Plaintiff's appeal.

**I. BACKGROUND**

On May 25, 1993, Plaintiff was awarded monthly disability benefits due to injuries he received in a motorcycle accident in 1991. (See R. at 26-29.) On May 1, 1995, Plaintiff received notice that his benefits terminated on April 30, 1995, due to a medical improvement. (R. at 49-51.) On May 25, 1995, Plaintiff filed a request for reconsideration of the disability cessation. (R. at 52-60.) On or about September 12, 1996, following a hearing, the disability cessation determination was upheld. (See R. at 86-100.) Plaintiff then requested a hearing by an Administrative Law Judge

("ALJ"). (R. at 101.)

On October 30, 1997, ALJ Javier Arrastia conducting a hearing where Plaintiff and vocational expert Dr. Steven H. Feinstein provided testimony. (See R. at 207-88.) Plaintiff was first examined by his attorney. (R. at 219-45.) Plaintiff testified that he was thirty-nine years old at that time and had not worked since the motorcycle accident in November 1991. (R. at 220-21.) Plaintiff testified that he had previously been employed as a fork lift operator for the last fifteen years before the onset of his disability. (R. at 220-21.) Plaintiff then testified that he suffers from pain resulting from the fractured left femur, multiple fractures in his right wrist, and fractured ribs that he sustained in the accident. (R. at 222-23.)

Plaintiff testified that those injuries cause him constant pain in his left leg while sitting and that the pain continues even in other positions. (See R. at 223-25.) Plaintiff testified that, as a result of the pain, he cannot walk even a block without having to stop and sit. (R. at 225-26.) Plaintiff testified that he uses a cane for walking, but that it does not help with the pain and is merely used for balance. (R. at 226-27.) Plaintiff then testified that a doctor prescribed the cane and that he tries not to walk at all, even with the assistance of a cane. (R. at 230.) Plaintiff then testified that he cannot sit for more than fifteen minutes before the pain becomes too much for him and that after five or ten minutes he must change positions. (R. at 228-29.) Plaintiff testified that he is unable to stoop or squat to lift anything. (R. at 229.)

Plaintiff then testified about the injuries to his right wrist, stating that he was unable to move it forward and backward. (R. at 232.) Plaintiff testified that he declined to have surgery on his hand because although it might reduce the pain, it wouldn't increase movement in his wrist. (See R. at 235.) Plaintiff testified that he experiences pain during movement of his wrist and that it is difficult

to move his hand to pick things up. (R. at 236.) Plaintiff testified that the pain in his right wrist is constant, but that certain movements could make the pain worse. (R. at 236-37.) Plaintiff then testified that motion causes the pain to radiate up to his elbow. (R. at 238.) Plaintiff further testified that he is left-handed, but then stated that he is ambidextrous. (R. at 229.) Plaintiff testified that he could lift one or two pounds with his right hand. (R. at 240-41.) Plaintiff testified that he does not take any prescription medication, but takes Tylenol on occasion. (R. at 242-43.) Plaintiff then testified that the Tylenol has little effect on the pain and causes drowsiness. (R. at 243.) Plaintiff testified that he does not cook for himself and that he does not drive. (R. at 244.) Finally, Plaintiff testified that the pain affects his ability to concentrate. (R. at 245.)

During questioning by the ALJ, Plaintiff testified that he had a tenth grade education. (R. at 245.) Plaintiff further testified that he had no limitation using his left hand and could move three of the fingers on his right hand. (R. at 246-47.) Plaintiff further testified that his fiancee, whom he lives with, helps him put his shoes on. (R. at 247.) Plaintiff testified that he mostly watches TV and that his young daughter visits on occasion as does his friend who comes over to play cards. (R. at 247-48.)

The ALJ then questioned Dr. Feinstein with respect to Plaintiff's case. (R. at 248-53.) Dr. Feinstein described Plaintiff's past relevant work as a forklift truck operator as medium level, semi-skilled work. (R. at 249.) The ALJ then posed hypotheticals to Dr. Feinstein and questioned him about the about jobs available in the regional economy for people with those requirements. (R. at 249-253.) Plaintiff's counsel then questioned Dr. Feinstein with respect to the jobs available under the hypotheticals. (R. at 253-79.) Following Plaintiff's counsel's closing statement, the ALJ closed the record.

On April 24, 1998, the ALJ issued a written decision in which he determined that Plaintiff was not entitled to disability benefits after April 30, 1995. (R. at 12-23). In the written opinion, the ALJ made the following findings:

1. The claimant was found to be disabled with the meaning of the Social Security Act beginning November 21, 1991, and he has not engaged in substantial gainful activity since that date.

2. The medical evidence establishes that the claimant currently is status-post fracture of the left femur and status-post surgery, and has arthritic changes of the right wrist.

3. The medical evidence establishes that the claimant does not have an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1, Subpart P, Regulations No. 4.

4. The impairments present as of February 1993, the time of the most recent favorable medical decision that the claimant was disabled, were delayed union of a left femur fracture, and a chronic right scaphoid fracture.

5. The medical evidence established that there has been improvements in the claimant's medical condition since February 1993, since there has been a decrease in the medical severity of the findings.

6. This medical improvement is related to the claimant's ability to work (20 CFR 404.1594).

7. The medical evidence establishes that the claimant currently has an impairment or combination of impairments which is severe.

8. As of April 30, 1995, the claimant's allegations of totally disabling pain and limitation are not supported by the objective evidence in the record and are therefore not entirely credible.

9. Since April 30, 1995, the claimant has the RFC to perform the

        requirements of sedentary work, with no more than occasional fine or gross manipulation of his nondominant right hand.

10. The claimant is not able to perform his past relevant work as a fork lift truck operator.

11. The claimant is thirty-nine years old, which is defined as a younger person (20 CFR 404.1563).

12. The claimant has a tenth grade education (20 CFR 404.1564).

13. The claimant does not have any acquired work skills which are transferable to the skilled or semiskilled work functions of other work (20 CFR 404.1568).

14. Considering an exertional capacity for sedentary work and the claimant's age, education, and work experience, Section 404.1569 and Rule 201.25, Table No. 1, of Appendix 2, Subpart P, Regulations No. 4, directs a conclusion of "not disabled."

15. Based on vocational expert testimony, the claimant's capacity for the full range of sedentary work has not been significantly compromised by his nonexertional limitations, since there are a significant number of jobs that exist in the national and regional economy that he can perform. Accordingly, using the above-cited rule as a framework for decision making, the claimant is no longer disabled.

16. The claimant's disability ceased on April 30, 1995 (20 CFR 404.1594(f)(8)).

(R. at 21-22.)

On or about May 12, 1998, Plaintiff requested a Review of Hearing Decision. (R. at 7-8.) On September 1, 2000, the Appeals Council denied Plaintiff's request. (R. at 3-4.) On November 3, 2000, Plaintiff filed the instant action with this Court, seeking a review of the Commissioner's denial of disability insurance benefits due to the cessation of disability.

5

## II. DISCUSSION

### A. Standard of Review

When reviewing the decision of the Commissioner, the district court must determine whether the denial of disability benefits is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Woody v. Sec'y of Health & Human Servs., 859 F.2d 1156, 1159 (3d Cir. 1988). It is well settled that the Commissioner's decisions as to questions of fact are conclusive before a reviewing court if they are supported by "substantial evidence in the record." 42 U.S.C. § 405 (g); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). "Substantial evidence" means more than "a mere scintilla." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). "It means such relevant evidence as a reasonable mind might accept as adequate." Id. If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)(citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

The Third Circuit has made it clear "that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)(emphasis in original). As the Third Circuit has held, access to the ALJ's reasoning is indeed essential to a meaningful court review. Fargnoli, 247 F.3d at 42. Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182

(3d Cir. 1992), cert denied, 507 U.S. 924 (1993). "Overall, the substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

  B. <u>Standard for Reviewing Whether a Disability Continues</u>

  Regulations promulgated under the Act establish a multi-step process for an ALJ's evaluation of a claimant's continuing disability. 20 C.F.R. § 404.1594(f). In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1594 (f)(1). If the claimant is working and the work is a substantial gainful activity, his application for disability benefits is automatically denied. <u>Id.</u> If the claimant is not employed, the ALJ proceeds to the next step and determines whether the claimant has a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1594 (f)(2). If so, the disability will be found to continue. <u>Id.</u> If not, the ALJ must determine whether there has been medical improvement as defined by the statute. 20 C.F.R. § 404.1594(f)(3).

  If there has been medical improvement, the ALJ must determine whether that improvement is related to the claimant's ability to do work in accordance with the statute, specifically whether there has been an increase in the claimant's residual functional capacity ("RFC") compared with the the most recent favorable medical determination. 20 C.F.R. § 404.1594(f)(4). If there has not been medical improvement or it was found to not be related to claimant's ability to work, the ALJ must determine whether any of the exceptions in the statute apply. 20 C.F.R. § 404.1594(f)(5). If none of them apply, claimant's disability will be found to continue. <u>Id.</u>

  If an exception from the second group applies, claimant's disability will be found to have ended. <u>Id.</u>; <u>see</u> 20 C.F.R. § 404.1594(e). If an exception from the first group applies, the ALJ must

determine whether all of the claimant's current impairments in combination are severe. 20 C.F.R. § 404.1594(f)(6); see 20 C.F.R. § 404.1594(d). If the impairments are deemed to not limit claimant's physical or mental abilities to do basic work activities, claimant will no longer be considered disabled. Id.

If the impairments are determined to be severe, the ALJ will assess claimant's ability to do substantial gainful activity. 20 C.F.R. § 404.1594(f)(7). Specifically, the ALJ will determine whether claimant's RFC allows claimant to still do work that he has done in the past. Id. If so, the disability will be found to have ended. Id. If not, the ALJ considers the final step, whether claimant's RFC, age, education, and past work experience permit claimant to do other work. 20 C.F.R. § 404.1594(f)(8). If so, disability will be found to have ended, and if not, disability will be found to continue. Id.

### C. The ALJ's Decision was Based on Substantial Evidence in the Record

Plaintiff first argues that the ALJ failed to properly consider his subjective complaints of pain, despite medical evidence to support them, in determining his disability status. (Pl.'s Br. at 14-21.) Plaintiff argues that the ALJ vacillated in acknowledging Plaintiff's pain, and ultimately failed to properly consider it when reaching his conclusion that Plaintiff could perform sedentary work. However, it is clear that the ALJ relied on substantial evidence in the record and properly considered Plaintiff's subjective complaints of pain in reaching this conclusion.

For an ALJ "to reject a claim of disabling pain, he must consider the subjective pain and specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record." Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir. 1990)(quoting Baerga v. Richardson, 500

F.2d 309, 312 (3d Cir. 1974), cert. denied, Baerga v. Weinberger, 420 U.S. 931, 95 S. Ct. 1133, 43 L. Ed. 2d 403 (1975)).  The Regulations state that objective evidence in addition to a consideration of Plaintiff's daily activities; the location, duration, frequency, and intensity of his pain; any precipitating and aggravating factors; the type dosage, dosage, effectiveness, and side effects of medications; treatment, other than medication, for the pain or other symptoms; any measures used to relieve symptoms and pain; and any functional limitations due to the symptoms all weigh into the evaluation of Plaintiff's pain and determining the extent to which it limits Plaintiff's capacity for work.  20 C.F.R. § 404.1529(c)(3)(i)-(vii).  In addition, allegations of pain cannot be used as the sole basis for finding a disability, but may be considered when a condition that may cause the pain is substantiated by the objective medical evidence.  See 20 C.F.R. § 404.1529.  Moreover, "[w]here medical evidence . . . support[s] a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993)(citations omitted).

     Contrary to Plaintiff's argument, the ALJ evaluated his complaints and found them inconsistent with the objective medical evidence in the record, stating that "[b]eginning April 30, 1995, the claimant's allegations of totally disabling left leg and wrist pain are not supported by the objective evidence in the record and are therefore not entirely credible."  (R. at 19.)  Although "it is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible,'" S.S.R. 96-7P (1996), here, the ALJ's finding is clearly supported by substantial evidence in the record and buttressed by a discussion of why Plaintiff's allegations were not credible.  (See R. at 19-20.)

First, the ALJ considered the objective medical evidence, including the record from before and after Plaintiff's last comparison point decision finding him disabled, that indicated: 1) from September 1993 through March 1995, Plaintiff's left leg fracture was healing; 2) an April 13, 1995 x-ray revealed a healed fracture; 3) Dr. Schwartz's statement that the fractures showed "excellent healing;" 4) previously reported left leg atrophy was no longer present; 5) his leg pain was caused by the hardware in his leg, which could be removed; 6) his right wrist had "limited motion and tenderness, but no grip weakness;" and 7) Dr. Schwartz's conclusion that Plaintiff's "only real orthopedic disability was the nonunion of the right carpal scaphoid, which would prevent him from performing heavy work with his right hand." (R. at 19.)

The ALJ also noted that Plaintiff's wrist limitation is not as significant since he is left-handed or at least ambidextrous. (Id.) Further, the ALJ cited additional medical records from October 10, 1995, in which the Plaintiff complained of "only intermittent pain" and x-rays from April 23, 1996, that showed that his femoral fracture had healed. (Id.) In addition, the ALJ considered medical evidence from Dr. Vekhnis' consultative examination that occurred on July 29, 1996. (Id.) Dr. Vekhnis attributed Plaintiff's leg pain to the hardware that was supposed to be removed. (Id.) Additionally, Dr. Vekhnis also concluded that Plaintiff's "[c]hronic pain, limited motion, and reduced carrying ability of the right wrist" were caused by the nonunion of a fracture in his wrist. (Id.)

Finally, the ALJ addressed Plaintiff's allegations of pain in relation to the objective medical evidence and Plaintiff's testimony. Notwithstanding complaints of constant pain that interrupts his concentration, the ALJ noted that Plaintiff does not take prescription pain medication. (Id.) As to concentration, the ALJ stated that Plaintiff can "play cards and checkers, which would require some

concentration." (Id.)  Additionally, the ALJ reported that Plaintiff has not received any subsequent treatment following his last physician visit in September 1996.  (Id.)  Moreover, the ALJ pointed to Plaintiff's "many" missed clinic appointments and that his wrist had never been set despite his allegations of pain.  (Id.)  Despite making findings that undermined Plaintiff's complaints of debilitating pain, the ALJ concluded that Plaintiff's ability to walk, stand, and use his right hand would be reduced because of his left leg pain and the arthritis in his wrist.  Therefore, the ALJ concluded that Plaintiff could perform sedentary work "with no more than occasional fine or gross manipulation with his nondominant right hand."  (Id. at 20).

      Based on the record, this Court concludes that there was substantial evidence to support the ALJ's decision and that the ALJ properly considered Plaintiff's subjective complaints of pain.  Moreover, Plaintiff's argument that the ALJ failed to comply with the Commissioner's protocol in providing a sufficiently detailed explanation of his reasoning is without merit.  The ALJ fully developed the record and explained his findings with sufficient detail by taking into account the findings and opinions of numerous physicians and medical consultants, as well as Plaintiff's testimony.  In contrast to Plaintiff's argument, the ALJ never wholly disputed Plaintiff's allegations of pain found in the record or made a determination that Plaintiff has no pain.  Rather, he found these allegations did not amount in the aggregate to be totally disabling or entirely credible considering the record of evidence.

      Plaintiff's second point on appeal alleges that the ALJ erroneously determined that Plaintiff could perform other work.  (Pl.'s Br. at 21-30.)  In particular, Plaintiff argues that the vocational expert, Dr. Feinstein, failed to properly consider all of his limitations.  Plaintiff asserts that his pain

precluded him from concentrating as required by the surveillance system monitor job identified by Dr. Feinstein**.**  Plaintiff also contends that Dr. Feinstein had inadequate knowledge of the job he testified Plaintiff could perform.  Additionally, Plaintiff argues that the vocational expert failed to consider his pain and inability to concentrate.

ALJs routinely seek the testimony of an impartial vocational expert to show that other jobs exist in significant numbers in  the economy that Plaintiff could perform, and "factors to be considered include medical impairments, age, education, work experience and RFC." Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005).  In Rutherford, the Third Circuit explained that the ALJ does not have to submit every alleged impairment to the vocational expert, but "must accurately convey . . . all of a claimant's *credibly established limitations*." Id. at 554.  Furthermore, it is well-settled that:

> Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert. The ALJ will normally ask the expert whether, given certain assumptions about the claimant's physical capability, the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy.  While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments.  Thus the expert must have evaluated claimant's particular impairments as contained in the record.

Id. at 553-554 (citing Podedworny v. Harris, 745 F.3d 201, 218 (3d Cir. 1984)).

Here, the record indicates that the vocational expert appropriately considered Plaintiff's credibly established limitations, which do not include his pain or lack of concentration.  The record

12

shows that the ALJ proposed several hypothetical questions to Dr. Feinstein reflecting Plaintiff's background and established impairments. (See R. at 249-53.) These questions described an individual with Plaintiff's age, education, and RFC:

> Assume a person who is 39 years old, with past relevant work at semi-skilled level, exhibiting an [sic] 10th grade education. If such a person were limited to sedentary work . . . [with] no more than occasional fine or gross manipulations with the non-dominant hand. Would there be work that such a person could perform with those limitations?

(R. at 249.) In addition, the ALJ also questioned Dr. Feinstein about the impact on vocational opportunities for a person who "could sit for no more than ten to fifteen minutes at a time" or who could "maintain attention and concentration for . . . no more than half hour at a time." (Id. at 252.) Based on these hypothetical scenarios, Dr. Feinstein identified several jobs that a person could perform that could be found in the national economy, including a surveillance system monitor position. (See R. at 249-53.) Although Dr. Feinstein clarified that the additional limitations presented may affect a person's ability to perform some of the jobs he referenced, (R. at 252-76), he maintained that the surveillance system monitor position was still viable for such an individual. (R. at 251-52.) As a result, Dr. Feinstein's testimony provides sufficient evidence to support the ALJ's decision. Moreover, the ALJ did not discount Plaintiff's pain in assessing whether he could perform this job. The record reveals that the ALJ addressed Plaintiff's objection that his pain would make this job impossible, noting that "the evidence does not show that [Plaintiff's pain] precludes concentration." (R. at 20.)

Plaintiff also expresses general disagreement with Dr. Feinstein's knowledge of the

13

surveillance system job he identified, noting inconsistencies in the job description between his testimony and the Department of Labor's Dictionary of Occupational Titles ("DOT"). (See Pl.'s Br. at 23-36.) Plaintiff argues that Dr. Feinstein inaccurately testified that the job takes place in "large office building or complexes" and that it exists in "significant numbers in the national economy." Rather, Plaintiff asserts that the job described in the DOT is a government position stationed in public transportation terminals and requires police training. Plaintiff also states that the job only exists in "significant numbers in the national economy" in the "police department, government service or public transportation" capacity.

In Rutherford, however, the Court held that minor inconsistencies between the vocational expert's testimony and DOT description were not egregious enough to warrant reversal where there was substantial evidence for the ALJ's decision. Rutherford, 399 F.3d at 558. Furthermore, other than citing the DOT job description, Plaintiff failed to offer evidence to support his arguments, including his allegation that Dr. Feinstein's testimony was incomplete. Although Plaintiff correctly notes that Dr. Feinstein did narrow Plaintiff's occupational options to one job during cross-examination, the Court finds no substantive inconsistencies in his testimony between the job described and the job listing in the DOT.

The Court finds that the record contains sufficient evidence to support the ALJ's reliance on Dr. Feinstein's testimony in the evaluation process. Accordingly, the Court finds that the ALJ's decision was based upon substantial evidence in the record and Plaintiff's appeal is denied.

### III. CONCLUSION

For the reasons stated herein, Plaintiff's appeal is denied.  An appropriate form of Order accompanies this Memorandum Opinion.


Dated:  August 9, 2006


                                          s/ Garrett E. Brown, Jr.
                                         GARRETT E. BROWN, JR., U.S.D.J.